# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Mack Seal Washington, Appellant.

Appellate Case No. 2017-001111

———————————

Appeal From Charleston County
Roger L. Couch, Circuit Court Judge

———————————

Opinion No. 5773
Heard September 16, 2019 – Filed September 16, 2020
Withdrawn, Substituted and Refiled October 7, 2020

———————————

## REVERSED AND REMANDED

———————————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Jonathan Scott Matthews, both of
Columbia; and Solicitor Scarlett Anne Wilson, of
Charleston, all for Respondent.

———————————

**HILL, J.:** Mack Seal Washington appeals his convictions for first-degree burglary, malicious injury to property, and obtaining goods by false pretenses, arguing the trial court erred in admitting an audio recording of certain hearsay statements a police detective made while interrogating him. We agree this was error and reverse and remand for a new trial.

# I. FACTS

On August 21, 2015, someone broke into a Johns Island home and stole several items, including a rifle and a Husqvarna weed eater. Police began focusing on Washington as a suspect when his fingerprints matched a latent print found on a washing machine at the burgled home. They later discovered that on the day of the burglary, Washington pawned a Winchester rifle at a pawnshop in North Charleston and a Husqvarna weed eater at a different branch of the same pawn shop. Washington was arrested on March 23, 2016, and Detective Timothy McCauley interviewed him the next day. After giving Washington *Miranda* warnings, McCauley began the interview, which largely consisted of McCauley asking Washington to explain how his fingerprints ended up at the crime scene and whether he could prove his innocence.

Before trial, Washington objected to the admissibility of the audio recording of the interview on three grounds: hearsay, improper bolstering of the State's fingerprint expert's testimony, and that it contained improper opinion evidence. The trial court excluded a few of McCauley's comments on bolstering grounds but admitted a redacted version of the audio. Listening to this redacted version, the jury heard McCauley make such comments to Washington as:

> "[C]an you explain why your fingerprints would have been inside the house?"

> "Were you on any kind of drugs or anything in any point of time back in the summer when you would have forgotten doing something? That might explain why you did it."

> "This is from the state law enforcement division where we send all our fingerprints . . . . It shows right here two fingerprints were taken. Identified as [Mack Seal] Washington with that specific state ID number which is assigned to you"

> "I'll call him [Washington's employer] up but how do you explain your fingerprints inside this man's house? . . . [T]here's no if, and, or buts about it"

"[B]ut you can't be at work and your fingerprint be inside the house at the same time"

"[T]hen how'd your fingerprint end up there?"

"[Y]ou still have to explain why your fingerprints [are] in that man's house."

"[W]ell then it still doesn't explain why your fingerprints are there and why you had a stolen gun, a stolen rifle. There was a second gun stolen, it was a pistol, which is why I think you're trying to put the story together of a person you ran into on Bees Ferry in the parking lot of Walmart. You're trying to put some story together to justify why you had access to those"

"[Y]ou also pawned a weed eater . . . . I'm saying you pawned that same day, the same day you pawned that rifle at a different pawn shop which is what people do when they're trying to spread out stuff that's stolen."

In addition to McCauley's testimony, the State's case included the testimony of the victims and the responding officer, the fingerprint evidence, and evidence relating to pawn tickets. The jury convicted Washington on all counts.

## II.  HEARSAY

Detective McCauley's interrogation method may have been a proper investigative technique, but every word he uttered during the out of court interview was inadmissible hearsay. Any doubt about its inadmissibility was removed by *State v. Brewer*, 411 S.C. 401, 768 S.E.2d 656 (2015), decided more than two years before Washington's trial, which held similar remarks made by a detective during an interrogation to be "unmistakable hearsay." 411 S.C. at 406–07, 768 S.E.2d at 659. While we acknowledge *Brewer* did not create a "categorical rule" that any statement made by a police officer during an interrogation is inadmissible, we also acknowledge such statements "will rarely be proper for a jury's consideration." *Id*. For hearsay purposes, there is no daylight between the detective's remarks in *Brewer* and McCauley's remarks here.

Washington's statements during the interview are not hearsay because they are admissions of a party offered against that party. Rule 801(d)(2)(A), SCRE. Therefore, when McCauley testified, the State could have admitted Washington's

statements by asking McCauley about them, avoiding the hearsay taint of McCauley's statements in the recording.

At the trial, the assistant solicitor contended McCauley's statements were not hearsay because they were not offered for their truth but to give Washington's answers "context." There is no "context" exception to the hearsay rule. *Brewer* rejected this same argument as "patently without merit," finding it had "no support in the law." *Id*. Undeterred, the State recycles the argument before us, still unaccompanied by any authority to support it. The statements were inadmissible hearsay, and we reverse the trial court's ruling admitting them.

## III.   <u>BURDEN SHIFTING</u>

As in *Brewer*, here there was no objection made to the recording on burden-shifting grounds. Nevertheless, as in *Brewer*, Detective McCauley's repeated requests that Washington explain why he was not guilty amounted to a "grave constitutional error." *Id*. at 408, 768 S.E.2d at 659. As Justice Kittredge so well put it, "Law enforcement's *ad nauseam* insistence that Brewer prove his innocence has *no* place before the jury. It is chilling that we have to remind the State that an accused is presumed innocent and that the State has the burden to prove guilt beyond a reasonable doubt." *Id*.

We respect our good dissenting colleague's contention that Washington did not adequately preserve his hearsay objection on appeal. We are convinced, though, that Washington preserved the hearsay issue given his specific hearsay objection to the trial court, and his extensive reliance on *Brewer* in his brief and at oral argument. *See* Toal et al., *Appellate Practice in South Carolina* 75 (3d ed. 2016) ("[W]here an issue is not specifically set out in the statement of issues, the appellate court may nevertheless consider the issue if it is reasonably clear from appellant's arguments."). While Washington may not have wrapped his issues up in a neat categorical box, we do not believe he abandoned the hearsay argument on appeal or that we should not address it. *See Calhoun v. Calhoun*, 339 S.C. 96, 105–06, 529 S.E.2d 14, 19–20 (2000) (holding a party did not limit claim by failing to use "transmutation" in her statement of issues on appeal where her argument discussed and cited to authority on transmutation); *Eubank v. Eubank*, 347 S.C. 367, 374 n.2, 555 S.E.2d 413, 417 (2001); cf. Rule 208(b)(1)(B), SCACR ("*Ordinarily*, no point will be considered which is not set forth in the statement of the issues on appeal.") (emphasis added).

The State did not raise preservation in its brief. Although the issue was raised by the panel at oral argument, the State spent considerable time in its brief and at oral argument claiming the recording is not hearsay. While we may invoke preservation

rules on our own, we should not be quick to disturb the parties' silence. *See Atlantic Coast Builders and Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) ("When the opposing party does not raise a preservation issue on appeal, courts are not precluded from finding the issue unpreserved if the error is clear. However, the silence of an adversary should serve as an indication to the court of the obscurity of the purported procedural flaw.") (Toal, C.J., concurring).

## IV.　**HARMLESS ERROR**

The error was not harmless. *State v. Young*, 420 S.C. 608, 625, 803 S.E.2d 888, 897 (Ct. App. 2017) (providing improper admission of hearsay may be deemed harmless if it appears beyond a reasonable doubt it did not contribute to the verdict). In *Brewer*, the defendant was tried on charges related to two shootings occurring the same night. A majority of the court found the error harmless as to the charges related to the first shooting (which had numerous eyewitnesses to Brewer firing shots, a photograph of Brewer at the scene with a gun, and evidence of there being only one shooter), but not harmless as to the murder charge related to the second shooting (of which there was only "thin, circumstantial" evidence against Brewer, and testimony that at least two shooters were present). *Brewer*, 411 S.C. at 409–10, 768 S.E.2d at 660.

The prosecution's case against Washington was strong but circumstantial, led by the fingerprint evidence. The State acknowledges fingerprint evidence alone is often not enough to get a burglary case to a jury. *See State v. Bennett*, 415 S.C. 232, 781 S.E.2d 352 (2016); *State v. Mitchell*, 332 S.C. 619, 506 S.E.2d 523 (Ct. App. 1998). In its brief, the State argues it was important to present the recording of McCauley's interview of Washington because it allowed the State to bolster the fingerprint evidence and attack Washington's alibi in detail. The State explained the recording gave them the opportunity to do both, without which their case would have been, in their words, "vulnerable to a directed verdict."

Washington told Detective McCauley he was working at the time of the burglary, but the State called his employer, who testified they had no record of Washington's attendance at work that day. The pawn tickets were incriminating, but there was evidence the victim first described the missing rifle as a Savage, not a Winchester. The weed eater was sold before the victim could verify its identity.

The State highlighted the recorded interview in its closing, and the jury later interrupted its deliberations to ask for a transcript of the interview. The trial court sent the seventeen-minute recording back to the jury room. Twenty minutes later, the jury found Washington guilty. Under the circumstances, it appears to us that the hearsay figured so prominently in Washington's trial that its "reverberating clang . . .

would drown all weaker sounds." *Shepard v. United States*, 290 U.S. 96, 104 (1933) (Cardozo, J.). We are therefore sure erroneously admitted hearsay evidence contributed to the jury verdict and was not harmless.

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., concurs.**

**KONDUROS, J., dissenting:** I respectfully dissent from my learned colleagues' opinion. While allowing Detective McCauley's statements made during his interrogation of Washington to be presented to the jury may have constituted a violation of *State v. Brewer*, 411 S.C. 401, 768 S.E.2d 656 (2015), by possibly shifting the burden of proof, this issue is not preserved. As the majority acknowledges, Washington's objection to the statements did not concern an alleged burden shifting nor mention a *Brewer* violation. The majority points out the objection to burden shifting in *Brewer* was not preserved. However, in *Brewer*, the defendant objected at trial on the basis that the interrogator's statements were hearsay *and renewed this argument on appeal*. *Id.* at 406, 768 S.E.2d at 658. The supreme court found the "evidence was hearsay, offered for the sole purpose of proving the truth of the matter asserted, establishing Brewer's guilt to all charges." *Id.* at 406-07, 768 S.E.2d at 659.

In the present case, the majority finds, "The statements were inadmissible hearsay, and we reverse the trial court's ruling admitting them." However, Washington's *sole* issue on appeal is the inclusion of the statements shifted the burden of proof and constituted improper opinion evidence. While the argument section of Washington's brief includes a quote from *Brewer* that the statements in that case were hearsay, the section does not include any argument that Detective McCauley's statements constituted hearsay. The sole reference to the statements constituting hearsay is in the facts section of Washington's brief, stating, "When the officer discussed the pawn tickets, the officer's statements were hearsay and improperly bolstered the testimony of the pawn shop dealers." Accordingly, I do not believe Washington has sufficiently raised any argument regarding hearsay to this court. *See State v. Jones*, 392 S.C. 647, 655, 709 S.E.2d 696, 700 (Ct. App. 2011) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review." (quoting *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001))); *id.* ("An issue is also deemed abandoned if the argument in the brief is merely conclusory." (quoting *State v. Colf*, 332 S.C. 313, 322, 504 S.E.2d 360, 364 (Ct. App. 1998), *aff'd as modified*, 337 S.C. 622, 525 S.E.2d 246 (2000))).

Because Washington has not raised the issue of hearsay to this court, I believe it is not properly before us and therefore, not appropriate for us to address on appeal. "[A]ppellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked." *State v. Austin*, 306 S.C. 9, 19, 409 S.E.2d 811, 817 (Ct. App. 1991) (alteration by court) (quoting *Langley v. Boyter*, 284 S.C. 162, 181, 325 S.E.2d 550, 561 (Ct. App. 1984), *rev'd*, 286 S.C. 85, 332 S.E.2d 100 (1985), *but cited with approval in Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991)). "The appellants have the responsibility to identify errors on appeal, not the [c]ourt." *Kennedy v. S.C. Ret. Sys.*, 349 S.C. 531, 533, 564 S.E.2d 322, 323 (2001). Therefore, I disagree with the majority's reversing Washington's convictions on this basis.

Likewise, Washington's burden shifting argument is not preserved for our consideration. As previously discussed, Washington objected to the disputed statements on the grounds of hearsay and improper bolstering. During the pretrial hearing, Washington argued Detective McCauley "g[a]ve[] opinions as to the strength of the evidence in t[he] case." Washington further argued Detective McCauley repeatedly stated Washington's fingerprint was inside the home and noted the defense disputed this assertion. Washington also argued the disputed statements constituted hearsay and improper bolstering. In response, the State argued Detective McCauley's questions were not hearsay because they were not offered for the truth of the matter asserted and did not constitute bolstering but instead would provide context for the responses Washington gave during the interrogation. When the State moved at trial to admit the recording of Washington's interrogation, Washington simply indicated he had the same objection as he did pretrial. Washington never mentioned *Brewer* nor the more general argument of burden shifting.[1] Therefore, the issue was not raised to nor ruled upon by the trial court.

"The general rule of issue preservation is if an issue was not raised to and ruled upon by the trial court, it will not be considered for the first time on appeal." *State v. Porter*, 389 S.C. 27, 37, 698 S.E.2d 237, 242 (Ct. App. 2010). "Imposing this preservation requirement is meant to enable the trial court to rule properly after it has considered all the relevant facts, law, and arguments." *Id.* at 38, 698 S.E.2d at 242. "The objection should be addressed to the trial court in a sufficiently specific

---

[1] The *Brewer* opinion was published January 28, 2015. Washington's trial took place over two years later on April 17-18, 2017.

manner that brings attention to the exact error. If a party fails to properly object, the party is procedurally barred from raising the issue on appeal." *State v. Johnson*, 363 S.C. 53, 58-59, 609 S.E.2d 520, 523 (2005) (citation omitted). "A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003). Because Washington never argued to the trial court that inclusion of the statements/questions by Detective McCauley improperly shifted the burden, I would find this issue unpreserved.

Even if the issues were preserved, I believe admission of Detective McCauley's statements constitutes harmless error in light of the other overwhelming evidence of Washington's guilt including the fingerprint evidence showing he had been inside the dwelling, the pawn tickets showing he was in possession of the stolen items on the day of the burglary, and his assertion of a spurious alibi. *See Brewer*, 411 S.C. at 408-09, 768 S.E.2d at 660 (holding the error in the admission of evidence in regards to certain charges was harmless in view of the overwhelming evidence of the defendant's guilt); *State v. Johnson*, 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989) ("The admission of improper evidence is harmless whe[n] it is merely cumulative to other evidence."); *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) ("Error is harmless when it 'could not reasonably have affected the result of the trial.'" (quoting *State v. Key*, 256 S.C. 90, 93, 180 S.E.2d 888, 890 (1971))).

Further, in its opening and closing statements, the State acknowledged that it bore the entire burden to prove Washington guilty. The trial court issued similar admonishments in its jury charge.

Therefore, I would find the trial court did not abuse its discretion in admitting Detective McCauley's statements and would affirm Washington's convictions.